# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARIA VARGAS OROZCO, | ) | |
| MANUELA VARGAS OROZCO, & | ) | |
| NITTA LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 22 C 5134 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ANTONY BLINKEN, Secretary, U.S. | ) | |
| Department of State & JOHN/JANE DOE, | ) | |
| Chief, Nonimmigrant Visa Section, U.S. | ) | |
| Embassy, Bogota, Colombia, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Maria and Manuela Vargas Orozco, sisters and Colombian citizens, filed this suit on behalf of themselves and their company, NITTA LLC, against the Secretary of the United States Department of State and the Chief of the Nonimmigrant Visa Section at the United States Embassy in Bogota to compel action on their E-2 visa applications, which they submitted on July 28, 2022. Plaintiffs request a writ of mandamus under 28 U.S.C. § 1361, as well as relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1), alleging unreasonable delay in the adjudication of their visa applications. Defendants argue that the delay has not been unreasonable as a matter of law and move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court grants the motion to dismiss in full because the delay in this case is not unreasonable as a matter of law.

BACKGROUND[1]

Plaintiffs are Colombian citizens and joint business owners of NITTA LLC, which they started together in July 2020. NITTA LLC, located in Chicago, Illinois, distributes Colombian-manufactured N-95 face masks throughout the United States. In May 2021, United States Citizenship and Immigration Services ("USCIS") approved Plaintiffs' applications for E-2 visas. An E-2 visa allows non-immigrant visitors to enter and remain in the United States for up to two years if they are doing so for commerce and to "develop and direct the operations of an enterprise" in the United States. 8 U.S.C. § 1101(a)(15)(E)(ii). Once USCIS approved their visa applications, Plaintiffs began working for NITTA LLC.

During the summer of 2022, Plaintiffs returned home to Colombia for business and personal reasons. With their E-2 status set to expire in January 2023, Plaintiffs sought to renew their E-2 visas while in Colombia before their planned return to the United States in November 2022 to resume operation of NITTA LLC. Accordingly, Plaintiffs submitted all parts of the E-2 visa application, including evidence of application fee payment, to the Bogota Embassy on July 28, 2022. As of September 15, 2022, the Bogota Embassy's website indicated an average visa interview wait time of sixteen days after application submission for nonimmigrant visas aside from F-1, B-1, and B-2 visas. Nonetheless, having waited nearly two months without any indication of when they would receive an interview, on September 21, 2022, Plaintiffs filed this

---

[1] The Court takes the facts in the background section from Plaintiffs' complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The parties have each attached affidavits to their briefing providing additional information about visa processing at the Bogota Embassy and other consular operations. See Docs. 22-1, 23-1. The Court does not find it appropriate to consider these affidavits at the motion to dismiss stage. *See Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018) (the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment). The Court, however, takes judicial notice of publicly available statistics and information concerning the Bogota Embassy's processing of E-2 visas. *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

lawsuit seeking to compel adjudication of their applications. Plaintiffs state they will be unable to return to the United States to run NITTA LLC without prompt adjudication of their visa applications and that their business will suffer as a result.

According to Plaintiffs, the Bogota Embassy suspended normal processing of E-2 visas altogether at the start of the COVID-19 pandemic. Indeed, according to its website, the Bogota Embassy has only now begun to process E-2 visa applications submitted before it ceased operations due to the pandemic. U.S. Embassy in Colombia, *E-1 and E-2 Visa Applications*, https://co.usembassy.gov/visas/important-visa-information/e-visas/. The Bogota Embassy issued four E-2 visas in fiscal year 2022. U.S. Department of State—Bureau of Consular Affairs, *Monthly Nonimmigrant Visa Issuance Statistics*, https://travel.state.gov/content/travel/en/ legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html. So far in fiscal year 2023, the Bogota Embassy has issued four E-2 visas in March 2023 and six in April 2023. *Id.*

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In their complaint, Plaintiffs ask that the Court compel Defendants to perform their duty

to adjudicate Plaintiffs' E-2 visa applications within a reasonable period of time as specified by

the Court, grounding this requested relief in the Court's power to issue writs of mandamus as

well as the APA. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of

any action in the nature of mandamus to compel an officer or employee of the United States or

any agency thereof to perform a duty owed to the plaintiff."); 5 U.S.C. § 706(1) (under the APA,

a reviewing court has the power to "compel agency action unlawfully withheld or unreasonably

delayed"). Defendants argue that the Court should dismiss Plaintiffs' case because they have not

experienced an unreasonable delay and so the Court cannot award Plaintiffs their requested

relief.[2] Defendants maintain that an analysis of Plaintiffs' allegations using the six factors set out

in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir.

1984), demonstrates that the delay in this case has been reasonable as a matter of law.

Because the parties analyze the reasonableness of the delay under the *TRAC* test, the

Court does the same.[3] The *TRAC* test requires the Court to consider:

---

[2] In their reply brief, Defendants also contend that Plaintiffs have not identified a mandatory, nondiscretionary duty that would entitle them to a writ of mandamus or relief under the APA. A defendant typically waives arguments raised for the first time in a reply brief, as doing so deprives the plaintiff of the opportunity to respond. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) ("This argument is waived, however, as the plaintiff failed to raise it until his reply brief, leaving the defendants no chance to respond."). Here, however, Plaintiffs filed a brief surreply addressing the duty question, and so the Court has received some adversarial presentation on the question. Nonetheless, because the Court can dispose of Plaintiffs' claims without needing to consider the duty question, the Court does not address the argument and instead assumes that such a duty exists.

[3] The parties do not separate out Plaintiffs' request for a writ of mandamus from the APA claim, and so, except as otherwise noted in the text, the Court similarly treats the analysis of the mandamus and APA claims together.

4

> (1) the time agencies take to make decisions must be governed by a
> "rule of reason"; (2) where Congress has provided a timetable or
> other indication of the speed with which it expects the agency to
> proceed in the enabling statute, that statutory scheme may supply
> content for this rule of reason; (3) delays that might be reasonable
> in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the
> effect of expediting delayed action on agency activities of a higher
> or competing priority; (5) the court should also take into account
> the nature and extent of the interests prejudiced by delay; and
> (6) the court need not "find any impropriety lurking behind agency
> lassitude in order to hold that agency action is unreasonably
> delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting

*TRAC*, 750 F.2d at 80). The Court also finds it appropriate to consider whether the agency has

taken recent action to reduce its backlog, a factor the Seventh Circuit has emphasized in its

consideration of APA claims. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir.

2017); *see Camarena v. Cuccinelli*, No. 19 C 5643, 2020 WL 550597, at *2 (N.D. Ill. Feb. 4,

2020); *Haus v. Nielsen*, No. 17 C 4972, 2018 WL 1035870, at *4 (N.D. Ill. Feb. 23, 2018).

Before evaluating the factors, however, the Court acknowledges Plaintiffs' concern that a

reasonableness analysis is typically better suited for a motion for summary judgment. Indeed,

*TRAC* factor analysis can be a "complicated and nuanced task requiring consideration of the

particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc.

v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). However, this does not mean the Court cannot

address the question at the motion to dismiss stage. *See Calderon-Ramirez*, 877 F.3d at 275–76

(affirming district court's dismissal of claims on a motion to dismiss). Indeed, in considering

this question now, "the Court is not determining whether there has been an unreasonable delay;

rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a

plausible claim for unreasonable administrative delay." *Ghadami v. D.H.S.*, No. 19-00397, 2020

5

WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020). The Court thus proceeds to consider the *TRAC*

factors, along with the Bogota Embassy's steps to address its backlog, based on the facts alleged

in the complaint to determine whether Plaintiffs have stated a claim for unreasonable delay.

### A. *TRAC* Factors 1 and 2

The "first and most important factor" hinges on whether a cognizable "rule of reason"

governs the "time agencies take to make decisions." *In re Core Commc'ns, Inc.*, 531 F.3d 849,

855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). Defendants contend that the applicable

rule of reason here consists of a standard "first-in, first-out" process, Doc. 22 at 5, which courts

have recognized as logical and reasonable under the *TRAC* analysis. *See, e.g.*, *N-N v. Mayorkas*,

540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C.

2021).

Plaintiffs do not challenge the first-in, first-out procedure, but rather the Bogota

Embassy's alleged failure to process applications as a whole, maintaining that the Bogota

Embassy's total suspension of visa adjudication at the start of the pandemic means that no rule of

reason exists. While courts have extended leniency to delays in the context of events like the

COVID-19 pandemic, *see Arab v. Blinken*, 600 F. Supp. 3d 59, 70–71 (D.D.C. 2022) (collecting

cases), others have questioned whether blanket suspensions in light of the COVID-19 pandemic

were governed by a rule of reason, *see Gomez v. Biden*, No. 20-cv-01419 (APM), 2021 WL

3663535, at *19 (D.D.C Aug. 17, 2021). Here, Plaintiffs argue that the Bogota Embassy's

suspension of E-2 visa adjudication has extended longer than necessary and so has become

unreasonable. Indeed, the Embassy is still not accepting new E-1 and E-2 applications as it

processes the oldest applications. *E-1 and E-2 Visa Applications*. But this suggests that the

Bogota Embassy has reverted back to a recognized rule of reason, the first-in, first-out

6

procedure, in an attempt to clear its backlog of applications caused by the pandemic suspension. *See Murway v. Blinken*, No. 21-1618, 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (collecting cases "finding that operational delays due to the COVID-19 pandemic favor the Government on the first two factors" and suggest a "rule of reason" for the State Department's timeline to adjudicate visas); *Palakuru*, 521 F. Supp. 3d at 51 (first-in, first-out method is governed by a rule of reason); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020) (existence of a rule of reason "will depend in large part . . . upon the complexity of the case at hand, the significance (and permanence) of the outcome, and the resources available to the agency" (omission in original) (quoting *Mashpee*, 336 F.3d at 1102)). Given the resumption in processing, this factor weighs slightly in favor of Defendants.

The Court thus turns to factor two, which provides additional content to factor one. *In re United Mine Workers*, 190 F.3d at 549. Though Defendants correctly point out that "Congress has established no firm timetable for scheduling the application at issue," Doc. 22 at 6, the *TRAC* analysis requires only an "indication of the speed with which [Congress] expects the agency to proceed in the enabling statute," *TRAC*, 750 F.2d at 70. 8 U.S.C. § 1571 sets out Congress' "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Section 1571's applicability to this case, however, is questionable given that it applies to the processing of immigrant benefit applications by USCIS, not the State Department. *See Arab*, 600 F. Supp. 3d at 69–70 (§ 1571(b) did not support finding Congress' intent to set a six-month timetable for the State Department's processing of applications where that provision applied to USCIS, not the State Department); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 3:21-cv-00361, 2021 WL 3141205, at *4 & n.2 (S.D. July 26, 2021) (the statute provides "the Immigration and Naturalization Service," which was

abolished and had its authority transferred to USCIS, "with the mechanisms it needs to eliminate the current backlog in the processing of immigration benefit applications" (quoting 8 U.S.C. § 1571(a)).  Even assuming that § 1571 applies to the State Department, its timeline is aspirational rather than binding, with the same statute recognizing the existence of a backlog in processing applications.  *Nat'l Ass'n of Mfrs. v. S.E.C.*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015); *Shen v. Pompeo*, No. 20-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021).

Without a particular timeframe, then, the Court looks to caselaw to guide its analysis, focusing on the length of time these particular plaintiffs have waited for a decision rather than the Bogota Embassy's overall pace of processing.  *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (finding less than two-year delay in processing petition did not require judicial intervention despite the fact that over six years had passed since the defendants had suspended processing petitions).  "No bright lines have been drawn in this context, but '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'"  *Sarlak*, 2020 WL 3082018, at *6 (alteration in original) (quoting *Yavari v. Pompeo*, No. 19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)) (collecting cases).  Here, Plaintiffs filed suit just two months after submitting their applications, and at this point a year has elapsed.  Such a comparatively short delay counsels heavily against finding the delay unreasonable, even at the motion to dismiss stage.  *See Murway*, 2022 WL 493082, at *2 ("The caselaw typically considers 'the two-year mark' to be 'the lowest threshold for a finding of unreasonable delay' in visa processing cases." (citation omitted)); *Sarlak*, 2020 WL 3082018, at *6 ("[D]eterminations about immigration visas frequently took many months or years, so no court has found a basis for

8

deeming a delay of two years in processing a waiver unreasonable."); *see also Arab*, 600 F. Supp. 3d at 70 (thirty-month delay in visa adjudication impacted by COVID-19 pandemic was not unreasonable); *Ghadami*, 2020 WL 1308376, at *8 (twenty-five month agency delay was reasonable despite delay being "entirely of the administration's own creation."); *cf. In re Core Commc'ns*, 531 F.3d at 858 (seven-year delay in explaining legal basis for agency rules after being ordered to do so by court several times was unreasonable); *In re United Mine Workers*, 190 F.3d at 551 (agency's eight-year delay in issuing health regulations was unreasonable).  And because Plaintiffs' claim is not that the Bogota Embassy wrongfully or unreasonably suspended adjudication for all applicants, but rather that their personal applications have been unreasonably delayed, the wholesale suspension of E-2 visa processing during the pandemic does not change the analysis.  *See Skalka*, 246 F. Supp. 3d at 154 (acknowledging the lengthy period of agency's suspension but finding specific plaintiff's shorter delay reasonable).  Thus, the second factor overwhelmingly favors Defendants.

## B.    *TRAC* Factors 3 and 5

Next, combining the third and fifth factors, the Court "takes into account the nature and extent of the interests prejudiced by the delay" while acknowledging that delays impacting economic interests may be more reasonable than those impacting human health and welfare. *TRAC*, 750 F.2d at 80.  The Court agrees with Plaintiffs that these factors do not mean that "the government has free rein to delay indefinitely where only economic interests are at stake."  Doc. 23 at 6.  But here, the human health and welfare interest Plaintiffs set forth, that NITTA LLC manufactures facemasks, does not implicate their own health and welfare interests but rather crystalizes the fact that the effect of the delay is instead on their financial interest in NITTA LLC.  This differs significantly from those cases where courts have found that factors three and

five favor the plaintiff, such as where the delays have separated married couples, *Sarlak*, 2020 WL 3082018, at *6, prevented children from reuniting with their parents, *id.*, or delayed educational and child-rearing plans, *Rahimian v. Blinken*, No. 22-785, 2023 WL 143644, at *3 (D.D.C. Jan. 10, 2023). Thus, the third and fifth factors weigh slightly in favor of Defendants.

      **C.**    ***TRAC* Factor 4**

      The fourth factor—the effect granting relief would have on the agency's competing priorities—weighs in favor of Defendants. Defendants' argument on this factor focuses on the impropriety of compelling "agency action where the result would be merely to expedite the consideration of a plaintiff's case ahead of others." Doc. 22 at 8 (citing *Calderon-Ramirez*, 877 F.3d at 275–76); *see Palakuru*, 521 F. Supp. 3d at 52 (fourth factor is "so critical" in the D.C. Circuit that "the Circuit has 'refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain" (quoting *Mashpee*, 336 F.3d at 1100)). Indeed, the Seventh Circuit has found this line-skipping concern dispositive for mandamus claims, indicating that mandamus relief is not appropriate absent facts differentiating a plaintiff's situation from that of other visa petitioners who have experienced longer delays. *Calderon-Ramirez*, 877 F.3d at 275. The same then applies here, to Plaintiffs' mandamus claim, where they have failed to allege any basis to distinguish their situation from those of others ahead of them in line. *See Haus*, 2018 WL 1035870, at *3 (following *Calderon-Ramirez* to find that plaintiff could not obtain a writ of mandamus where he did not allege any facts to distinguish himself from other visa applicants who filed before him and were still waiting to receive an adjudication).

Some district courts, however, have read *Calderon-Ramirez*'s failure to discuss the line-skipping concern in connection with the APA claim to mean that it has little relevance to the APA reasonableness analysis. *See Camarena*, 2020 WL 550597, at *2 (collecting cases). And other courts considering APA claims have noted that the line-skipping concern may hold less force where, as Plaintiffs allege, the Bogota Embassy completely suspended normal visa processing for a period of time. *See Skalka*, 246 F. Supp. 3d at 153 (typical caution in intervening when relief would allow for line skipping was not a "particularly good fit for a case . . . where the agency has decided . . . to suspend processing"). Thus, the Court finds Defendants' line-skipping concern relevant only to Plaintiffs' request for a writ of mandamus.

Nonetheless, beyond line-skipping concerns, granting relief in this case would likely result in the appropriation of resources away from what the Bogota Embassy in its discretion deems its most pressing matters. *See Pesantez v. Johnson*, No. 15 Civ. 1155, 2015 WL 5475655, at *6 (E.D.N.Y. Sept. 16, 2015) (judicial intervention in immigration application processing "would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole"). Plaintiffs do not dispute that granting the relief sought would divert resources from other nonimmigrant visa adjudications and general consulate responsibilities. The Court understands Plaintiffs' contention that the main reason Defendants have to choose between competing priorities is their own failure to manage their backlog responsibly. However, agency fault is not dispositive, *Sarlak*, 2020 WL 3082018, at *6, and "no reason [exists] to think that a judicial decree advancing one applicant would cure [the agency's] incompetence, if it exists and even if it is severe," *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). Given the diversion of resources from other important priorities, this factor weighs in favor of Defendants.

11

    **D.**     *TRAC* **Factor 6**

The sixth *TRAC* factor adds little to the analysis: Plaintiffs do not allege bad faith, and no allegation of bad faith is required to find unreasonableness. *Sarlak*, 2020 WL 3082018, at *6.

    **E.**     **Agency Action to Alleviate Its Backlog**

In addition to the *TRAC* factors, the Court also considers whether the agency has taken action to alleviate its backlog. *Camarena*, 2020 WL 550597, at *2. In *Camarena*, the court found that the plaintiff had sufficiently alleged that a three-year delay in adjudicating a visa application was unreasonable in part because the agency had taken no steps to reduce its large and steadily growing backlog. *Id.* at *3. According to *Camarena*, the agency's failure to do so differentiated the case from *Calderon-Ramirez*, where the Seventh Circuit relied partly on USCIS' steps to alleviate its backlog by distributing visa petitions to a second service center in finding the delay reasonable at the motion to dismiss stage. *Id.* (citing *Calderon-Ramirez*, 877 F.3d at 276). Here, the Bogota Embassy has admittedly recommenced processing for those "visa applicants who submitted applications prior to [the Embassy's] ceasing operations due to COVID-19," but they continue not to accept any new applications. *E-1 and E-2 Visa Applications*. Starting to process old applications is certainly better than refusing to process any at all, but without more, at this stage, this factor weighs slightly against Defendants. *Cf. Calderon-Ramirez*, 877 F.3d at 276 (denying APA relief at the motion to dismiss stage where, among other things, USCIS had distributed backlogged petitions to a second service center).

    **F.**     **Summary**

Taken together, the seven factors show that Plaintiffs did not allege facts sufficient to state a claim for unreasonable delay at this time. While the Court sympathizes with the hardships Plaintiffs have experienced as they await the adjudication of their visa applications, the

year that Plaintiffs have waited for their visas does not come close to the delays that courts have considered unreasonable. *See Sarlak*, 2020 WL 3082018, at *6 ("[D]elays of about two years . . . have been deemed reasonable as a matter of law."); *Ghadami*, 2020 WL 1308376, at *9 ("[T]he Court finds itself constrained not to declare two years to be unreasonable as a matter of law"). The Court's analysis could change the longer Plaintiffs wait, but at this point, Plaintiffs' allegations do not allow for a finding of unreasonable delay for purposes of both their APA and mandamus claims. And the fact that Plaintiffs have not identified any basis to differentiate their situation from that of other applicants who applied before them further underscores the inapplicability of a writ of mandamus. *Calderon-Ramirez*, 877 F.3d at 275–76.

That said, the Court finds troubling the Bogota Embassy's apparent decision to suspend adjudication for E-2 visas for approximately three years and its continued moratorium on new applications as it slowly addresses those filed before the pandemic. While the Court cannot compel Defendants to adjudicate Plaintiffs' applications, it "echoes others that have cautioned 'the agency to devote the resources and put in place the apparatus needed to evaluate the many claims for [E-2 visas] expeditiously to ensure that the [E-2 visa] provision does not become an empty promise.'" *Sarlak*, 2020 WL 3082018, at *7 (quoting *Ghadami*, 2020 WL 1308376, at *9).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [21]. The Court dismisses Plaintiffs' complaint without prejudice and terminates this case.

Dated: July 18, 2023

SARA L. ELLIS
United States District Judge

13